IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TOMMY WOOD,                           *
ADC #132786,                         *
                                     *
            Petitioner,              *
v.                                   *          No. 5:19cv00045-JJV
                                     *
WENDY KELLEY, Director,              *
Arkansas Department of Correction,   *
                                     *
            Respondent.              *

## MEMORANDUM AND ORDER

## I.    INTRODUCTION

Petitioner Tommy Wood, an inmate at the Tucker Unit of the Arkansas Department of Correction ("ADC"), brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus.   (Doc. No. 1.)   Mr. Wood was charged in Arkansas County Circuit Court of manufacturing methamphetamine and possession or use of paraphernalia with intent to manufacture methamphetamine.   (Doc. No. 6-2 at 1.)   He negotiated a plea of guilty, agreeing to a sentence recommendation of "[d]rug court with 90 day inpatient rehab at commencement."   (*Id*. at 4-7.) After he was discharged from drug court for violations (Doc. No. 6-5 at 4), Mr. Wood was sentenced to terms of twenty-five years' imprisonment and twenty years' imprisonment, to be served concurrently.   (Doc. No. 6-6 at 19-21.)

Mr. Wood then filed a *pro se* petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37; after he retained counsel in the post-conviction matter, an amended Rule 37 petition was filed on his behalf.   (*Id*. at 22-29, 48-59.)   The petition was denied after a hearing.   (*Id*. at 60, 79.)   Mr. Wood's counsel filed a notice of appeal from the denial of Rule 37

relief and timely lodged the record.   (*Id*. at 63, 78.)   Counsel later filed a motion to be relieved, which the Arkansas Court of Appeals granted.   (Doc. No. 6-7 at 3-4.)   Mr. Wood proceeded *pro se* but did not file a timely brief after several extensions, and his appeal was ultimately dismissed. (*Id*. at 4-6.)

Mr. Wood filed the instant Petition for Writ of Habeas Corpus on January 29, 2019.   (Doc. No. 1.)   He contends his guilty plea was not knowingly, voluntarily, or intelligently entered and was based on ineffective assistance of counsel for four separate reasons: (1) his trial counsel should have moved to suppress the evidence leading to the guilty plea (Doc. No. 1 at 7); (2) his trial counsel should have moved to set aside the plea on the ground that Mr. Wood did not receive the benefit of his plea bargain under *Santobello v. New York*, 404 U.S. 257 (1971) (*Id*. at 10); (3) his trial counsel incorrectly advised him regarding parole eligibility (*Id*. at 13); and (4) his trial counsel should have pursued a direct appeal following the sentence (*Id*. at 14).   Mr. Wood also argues he was denied his right to effective assistance of counsel at the "post-trial, pre-appeal stage," when he was still represented by his trial counsel, because he should have been given conflict-free counsel who could have filed a motion for new trial under Arkansas Rule of Criminal Procedure 33.3 based on his trial counsel's ineffectiveness.   (*Id*. at 17.)

Respondent argues Mr. Wood's claims are procedurally defaulted and meritless.   (Doc. No. 6 at 19-25.)   After careful consideration of the Petition, Response, and Reply (Doc. No. 7), I find the Petition should be dismissed with prejudice.

## II.    ANALYSIS

### A.    Procedural Default

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts.   *Murphy v. King*, 652

F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).   The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."   *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981).   When an inmate fails to comply with the fair-presentment requirement, his or her claims will be procedurally defaulted. *Murphy*, 652 F.3d at 849.

If it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default'" or actual innocence.   *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).   When a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent.   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Mr. Wood tacitly acknowledges that all of his claims are procedurally defaulted, as some

were not raised in his amended Rule 37 petition and others were raised therein but were not fully litigated due to his failure to perfect an appeal.  (Doc. No. 7 at 1.)  He argues, however, that "cause" is present to excuse any default.

### 1.    Claims Omitted from Amended Rule 37 Petition

Two of the claims Mr. Wood now raises were not raised in his amended Rule 37 petition: that his trial counsel was ineffective for failing to move to set aside the guilty plea under *Santobello*, *supra*,[1] and that he was deprived of effective assistance when he was not given conflict-free counsel during the post-trial stage who could challenge his trial counsel's effectiveness.  Mr. Wood claims there is cause to excuse the procedural default of these claims under *Martinez v. Ryan*, 566 U.S. 1 (2012).

In *Martinez*, the United States Supreme Court modified the general rule that an attorney's errors in a post-conviction proceeding do not qualify as cause for a default:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.  The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

566 U.S. at 14.   In *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), the Court expanded the holding

---

[1] As Mr. Wood points out, his Rule 37 counsel did raise a *Santobello* claim in the amended Rule 37 petition, arguing the terms of the plea agreement were not fulfilled because Mr. Wood spent the initial ninety days incarcerated at a Residential Punishment Facility rather than in a "bona fide treatment program."  (Doc. No. 6-6 at 53.)   Rule 37 counsel suggested Mr. Wood be allowed to withdraw his guilty plea or have his original sentence reinstated so it could commence in an "authentic" rehabilitation facility.  (*Id*. at 53-54.)   However, he did not argue trial counsel was ineffective for failing to make such a motion.

in *Martinez* to cases in which the state procedures, by reason of their design and operation, make it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."  And in *Sasser v. Hobbs*, 735 F.3d 833, 852-53 (8th Cir. 2013), the United States Court of Appeals for the Eighth Circuit held the *Trevino* analysis applies – and *Martinez* is therefore applicable – in Arkansas cases because Arkansas does not generally afford defendants meaningful review of ineffective-assistance-of-trial-counsel claims on direct appeal.

According to Mr. Wood, *Martinez* excuses the default of these claims because his Rule 37 counsel was ineffective for failing to raise them in his amended petition.  (Doc. No. 7 at 8-10.)  I disagree.  I cannot say Mr. Wood's Rule 37 counsel was ineffective for declining to include these claims in the amended petition; nor can I characterize them as substantial claims.

a.    Failure to Move for Specific Performance of Plea Agreement

The crux of Mr. Wood's *Santobello* claim is that he did not receive the benefit of his plea bargain.  (Doc. No. 1 at 10.)  He contends he should have spent the ninety days prior to entering drug court in a "free world" drug treatment facility, rather than a Residential Punishment Facility operated by Arkansas Community Correction ("ACC"), which he claims did not offer the quality of treatment necessary to prepare him for success in drug court.  (*Id*.)  Mr. Wood argues his trial counsel should have filed a motion seeking specific performance of the plea agreement – either a motion for new trial under Arkansas Rule of Criminal Procedure 33.3 or a motion to withdraw the plea under Rule 26.1(b)(iv) – pursuant to *Santobello*.  *See* 404 U.S. at 262 ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").  (Doc. No. 1 at 12.)  And he argues his Rule 37 counsel was ineffective for failing to include this ineffective-assistance-

of-trial-counsel claim in the amended Rule 37 petition.    (Doc. No. 7 at 8-9.)

The problem with Mr. Wood's argument is that it is unsupported by the record.    His plea agreement did provide for ninety days of "inpatient rehab."    (Doc. No. 6-2 at 7.)    However, it is clear from all the evidence in the record that the parties contemplated this "rehab" would occur in a regional correctional facility operated by Arkansas Community Correction (formerly the Department of Community Correction).    This is reflected in the trial court's orders (*Id*. at 8, 10) as well as in the transcript of the guilty plea itself.    There, the prosecutor noted Mr. Wood's "immediate treatment" could take place at a Residential Punishment Facility, where "they have a couple hundred beds devoted . . . for drug court persons."    (Doc. No. 6-3 at 3.)    The prosecutor also noted the parties' agreement that Mr. Wood "could remain out until there's a bed available for him."    (*Id*.)    In taking the plea, the trial judge told Mr. Wood his transfer to drug court would be "[c]onditioned upon you doing a . . . 90 day inpatient rehabilitation treatment at a RCF facility." (*Id*. at 4.)    Mr. Wood agreed this was his understanding of the recommendation.    (*Id*. at 4-5.)

At the Rule 37 hearing, Mr. Wood acknowledged he participated in classes and meetings at the facility and saw a counselor.    (Doc. No. 6-6 at 98-99, 105.)    An ACC employee testified about the ninety-day "quick start" program for drug court enrollees, which usually takes place at a "Regional Correctional Facility" and which she characterized as "extensive and exhaustive." (*Id*. at 124.)    She stated Mr. Wood would have received a letter on ACC letterhead providing information about the program prior to his enrollment.    (*Id*. at 125.)    Mr. Wood's trial counsel testified Mr. Wood communicated with him about his dissatisfaction with the facility after his arrival.    (*Id*. at 133.)    In response to those complaints, trial counsel spoke with officials at the facility, and possibly with the prosecutor's office, to "inquire about whether what he was telling me was correct and that where he was being held was not a . . . rehabilitation center."    (*Id*.)

Given that it was evidently the parties' understanding all along that Mr. Wood would be enrolled at an ACC facility, I cannot conclude his trial counsel was ineffective for failing to file a motion for specific performance of the plea agreement pursuant to *Santobello*.   When Mr. Wood complained about the facility to his trial counsel, his trial counsel investigated and presumably found no basis for such a motion.   This is supported by the testimony indicating Mr. Wood did receive treatment at the ACC facility, including counseling, group meetings, and classes.   As the circuit court stated at the Rule 37 hearing, the fact that the ACC facility did not comport with Mr. Wood's idea of what constitutes a bona fide rehabilitation facility is not a ground to find ineffective assistance of counsel.   (Doc. No. 6-6 at 157.)   Mr. Wood has not shown, under the "highly deferential" *Strickland* standard,[2] that his trial counsel's performance fell outside the wide range of reasonable professional assistance.   466 U.S. at 689.   Nor has he established a reasonable probability that, had his trial counsel filed a *Santobello* motion, the outcome would have been different.   *Id*. at 694.

Because the performance of Mr. Wood's trial counsel was not deficient, it follows that his Rule 37 counsel was not ineffective for failing to raise this particular ineffective-assistance-of-trial-counsel claim.   Additionally, as previously noted, Rule 37 counsel did raise a direct *Santobello* claim in the amended Rule 37 petition.   Contrary to Mr. Wood's contention that such a claim was not cognizable in Rule 37, "the remedy in place for challenging a guilty plea on the basis that it was not entered into voluntarily or knowingly is a petition for postconviction relief

---

[2] A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.   *Strickland*, 466 U.S. at 687.   First, the defendant must show counsel's performance was deficient, which requires a showing that counsel made errors so serious he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.   *Id*.   Second, the defendant must show the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial.   *Id*.

filed pursuant to Arkansas Rule of Criminal Procedure 37.1." *Cook v. Hobbs*, 2011 Ark. 382, at 4; *see also State v. Herred*, 332 Ark. 241, 964 S.W.2d 391 (1998).

For the same reasons, Mr. Wood has not established that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one. *Martinez*, 566 U.S. at 14 (the prisoner must demonstrate that the claim has "some merit"). The essence of the claim is that his trial counsel was deficient for failing to challenge a portion of the plea agreement that was contemplated by the parties from the outset and which Mr. Wood became dissatisfied with only when it came to fruition.

Accordingly, *Martinez* is inapplicable. Mr. Wood has not demonstrated cause to excuse his procedural default of this claim.

> b.    Denial of Conflict-Free Counsel at Post-Trial Stage

In this claim, Mr. Wood argues he was denied the assistance of effective and conflict-free counsel in the post-trial stage of his case, when he was still represented by trial counsel. (Doc. No. 1 at 17.) He contends he should have been appointed new counsel, who could have filed either a *Santobello* motion or a Rule 33.3 motion alleging ineffective assistance of trial counsel. (*Id*. at 18.) Mr. Wood relies on *Robinson v. Norris*, 60 F.3d 457 (8th Cir. 1995), and contends his Rule 37 counsel was ineffective for failing to raise this issue in the amended Rule 37 petition. (*Id*., Doc. No. 7 at 9-10.) According to Mr. Wood, all Rule 37 counsel had to do was recognize *Robinson* and "realize that it stands for the proposition that a defendant enjoys a Sixth Amendment right to post-trial counsel." (Doc. No. 7 at 10.)

In *Robinson*, the Eighth Circuit addressed the right to counsel at the post-trial stage of a case, as distinct from the post-conviction collateral proceeding stage. The petitioner in that case was convicted at a time when Rule 37 did not exist and "the only means by which a person convicted of a crime could challenge the effectiveness of his defense counsel was through a motion

for new trial pursuant to Ark. R. Crim. P. 36.4." 60 F.3d at 459 n.2. The Eighth Circuit held the "Rule 36.4 proceeding was a critical stage" of the case, meaning the Sixth Amendment right to counsel attached, and the defendant was entitled to separate counsel to pursue his ineffective-assistance claim. *Id*. at 460.

As Respondent points out, *Robinson* is limited in its relevance because Rule 36.4 has since been replaced with Rule 37. A post-trial motion for new trial is no longer the "only means" of challenging the effectiveness of trial counsel. The Eighth Circuit and the Arkansas Supreme Court have recognized that Rule 37 is now the primary means of challenging the effectiveness of trial counsel, although "'such relief may be awarded a defendant on direct appeal in limited circumstances' based on a motion for new trial." *Rounsaville v. State*, 374 Ark. 356, 360-61, 288 S.W.3d 213, 217 (2008) (quoting *Missildine v. State*, 314 Ark. 500, 507, 863 S.W.2d 813, 818 (1993)); *see also Sasser*, 735 F.3d at 851-53. And the whole point of the narrow *Martinez* exception is to excuse default when the procedures are such that a defendant's first real opportunity to challenge trial counsel's effectiveness is in a collateral proceeding such as Rule 37:

> By deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims. It is within the context of this state procedural framework that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default.

*Martinez*, 566 U.S. at 13. Under *Trevino*, *Martinez* applies not only where an initial-review collateral proceeding is the only means of challenging trial counsel's effectiveness, but also where it is "highly unlikely" that a defendant will have a "meaningful opportunity" to raise such a claim on direct appeal. 569 U.S. at 429.

In *Sasser*, the Eighth Circuit addressed the situation Mr. Wood raises in this claim. The Court noted Arkansas does not provide defendants with new counsel on direct appeal as a matter

of course, sometimes resulting in the same allegedly ineffective lawyer representing a defendant

both throughout a trial and on direct appeal.   735 F.3d at 851-52.   This framework is problematic

for a defendant who wishes to challenge trial counsel's effectiveness on direct appeal, for obvious

reasons – "it is unrealistic to expect trial counsel, who is also appellate counsel, to call into question

his own competence."   *Id.* at 852 (quoting *Rounsaville v. State*, 373 Ark. 194, 195, 282 S.W.3d

759, 760 (2008) (per curiam)).   It was for this reason the Eighth Circuit held the Arkansas

procedures do not afford meaningful review of a claim of ineffective assistance of trial counsel on

direct appeal and the *Martinez* exception should apply under *Trevino*.   *Id.* at 853.   The Court

acknowledged the possibility of the appointment of new counsel in the post-trial stage, ultimately

holding it was still insufficient to constitute meaningful review:

> As the facts of this case demonstrate, it is only possible for an indigent
> capital defendant to bring an ineffective assistance claim on direct appeal in
> Arkansas if (1) the defendant raises the claim pro se in the trial court or (2) the
> defendant's trial counsel "falls on his own sword" by moving for a new trial based
> on his own ineffectiveness and also moving for appointment of new counsel.
> Neither alternative is sufficient in light of *Trevino*, and the latter alternative is
> especially troubling as a matter of professional ethics, potentially requiring trial
> counsel to choose between accurately asserting he was effective or inaccurately
> asserting that he was not.   The first option would violate the lawyer's duty of
> zealous representation to his client and the second his duty of candor to the court.
> A direct appeal procedure predicated on such a conflict of interest does not present
> indigent capital defendants a viable opportunity to challenge their appointed trial
> counsel's effectiveness.

*Id.* at 852-53.

The record does not reflect that Mr. Wood filed a *pro se* motion for new trial alleging his

trial counsel was ineffective.   Even if he had, the motion would not have been successful.   The

Arkansas Supreme Court has held an ineffective-assistance claim in a motion for new trial is

appropriate only "when the facts surrounding the claim were fully developed during the trial or

during hearings conducted by the trial court."   *Rounsaville*, 374 Ark. at 361, 288 S.W.3d at 217.

Moreover, Mr. Wood's trial counsel cannot be faulted for failing to file such a motion on his behalf, because Mr. Wood had other, more appropriate means of challenging his trial counsel's effectiveness.   He obtained separate counsel at the post-conviction stage, who filed an amended Rule 37 petition raising a direct *Santobello* claim and multiple allegations of trial counsel's ineffectiveness.   In other words, Mr. Wood had an opportunity to bring these claims in an initial-review collateral proceeding, which *Martinez* and *Trevino* contemplate.   Accordingly, I cannot say the underlying claim is a substantial one, nor can I say Rule 37 counsel was ineffective for failing to raise it.   Mr. Wood has not demonstrated cause to excuse his procedural default of this claim.

## 2.    Claims Included in Amended Rule 37 Petition

Mr. Wood's remaining claims – that his trial counsel was ineffective for failing to file a motion to suppress, for incorrectly advising him regarding parole eligibility, and for failing to pursue a direct appeal – were all raised in his amended Rule 37 petition.   (Doc. No. 6-6 at 50-57.) However, these claims were defaulted when Mr. Wood failed to perfect an appeal from the denial of Rule 37 relief.   *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (to exhaust, a petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").   As Respondent points out (Doc. No. 6 at 19) and Mr. Wood acknowledges (Doc. No. 7 at 10), *Martinez* does not excuse the default of these claims because "*Martinez* expressly does not excuse a procedural default that occurs in the appeal of a collateral state court proceeding."   *Franklin v. Hawley*, 879 F.3d 307, 309 (8th Cir. 2018).   "[I]t is clear that the *Martinez* exception applies only if the procedural default occurs during the *initial-review* of the ineffective assistance claim."   *Id*. at 313 (emphasis in original); *see also Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney

errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.").

Nonetheless, Mr. Wood contends there is cause to excuse his default for a different reason: his Rule 37 counsel abandoned him on appeal from the denial of Rule 37 relief.   (Doc. No. 7 at 10.)   Mr. Wood "vehemently disagrees" with his Rule 37 counsel's assertion in his motion to be relieved that Mr. Wood was not meeting his financial obligations.   (*Id*. at 11.)   He further argues this error was compounded by the denial of his right to meaningful access to the courts; according to Mr. Wood, he was not afforded access to the tools needed to perfect his appeal on his own once he was abandoned by counsel.   (*Id*. at 11-12.)   Mr. Wood cites *Holland v. Florida*, 560 U.S. 631 (2010), a case in which the United States Supreme Court addressed the one-year statute of limitations for habeas petitions under the Antiterrorism and Effective Death Penalty Act of 1996 and held it is subject to equitable tolling when attorney misconduct or neglect rises to the level of "extraordinary circumstances."

The United States Supreme Court has applied *Holland* in the procedural-default context. In *Maples v. Thomas*, 565 U.S. 266, 270 (2012), a capital prisoner's attorneys abandoned him while his post-conviction petition remained pending in the state trial court, leaving the law firm where they were employed and taking on new employment that prevented them from continuing to represent him.   The petition was eventually denied, and the prisoner's time to file an appeal expired, defaulting the claims he later raised in habeas.   *Id*. at 270-71.   The Court acknowledged the general (pre-*Martinez*) rule that negligence on the part of a prisoner's post-conviction attorney does not qualify as cause, because the attorney acts as the prisoner's agent, and "under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent."

12

*Id*. at 280-81 (quoting *Coleman*, 501 U.S. at 754).   "A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default." *Id*. at 281.   The Court held attorney abandonment severs the principal-agent relationship and can constitute cause sufficient to excuse a procedural default.   *Id*. at 281-83.

The facts of *Maples* differ in some critical respects from those at issue in this case.   Most notably, the prisoner in *Maples* was abandoned by his attorneys "without notice."   *Id*. at 281. His attorneys did not tell him they would no longer represent him, and they did not seek leave to withdraw.   *Id*. at 270.   Consequently, the prisoner did not know he needed to proceed *pro se* or seek other counsel to file an appeal on his behalf.   Additionally, because the attorneys remained the listed attorneys of record, they – not the prisoner – received notice of court orders.   *Id*. at 284. Notices of the order denying post-conviction relief were sent to the attorneys at their former law firm and were returned unopened to the trial court clerk, who did not attempt any further mailing. *Id*. at 271.   Thus, the prisoner had no idea his petition had been denied.   "Given no reason to suspect that he lacked counsel able and willing to represent him, Maples surely was blocked from complying with the State's procedural rule."   *Id*. at 289.   The Court noted this was a matter of "fundamental fairness" given the "unusual circumstances" of the case.   *Id*.

Here, Mr. Wood's Rule 37 counsel actually filed a notice of appeal on his behalf and also lodged the record.   (Doc. Nos. 6-6 at 63, 6-7 at 2-3.)   It was only after that point that he filed a motion to be relieved, citing Mr. Wood's inability to pay him.   (Doc. No. 6-7 at 3.)   At the same time, he also requested an extension of time for Mr. Wood to file his own brief.   (*Id*.)   Thereafter, Mr. Wood filed *pro se* motions for appointment of counsel and extension of time.   (*Id*. at 3-4.) The Arkansas Court of Appeals granted counsel's motion to withdraw and denied Mr. Wood's motion for appointment of counsel but allowed him extra time to file a *pro se* brief.   (*Id*. at 4.)

Mr. Wood was subsequently granted another extension of time.  (*Id*. at 5.)  When he failed to file a timely brief following the final extension, the appeal was dismissed.  (*Id*. at 6-7.)  Clearly, Mr. Wood had notice that his counsel was seeking to be relieved and had ample opportunity to file a *pro se* brief or seek the services of other counsel.   These are not the type of "unusual circumstances" present in *Maples*, where principles of fairness dictated a finding of cause.

It is well established that cause must be "something *external* to the petitioner, something that cannot fairly be attributed to him."  *Coleman*, 501 U.S. at 753 (emphasis in original).   Mr. Wood was no doubt at a disadvantage after his counsel's withdrawal, but he was in a position to file a brief on his own behalf or seek other counsel.   And although he suggests an effort to proceed *pro se* would have been hampered by a lack of access to the tools necessary to perfect an appeal, this allegation lacks any specificity whatsoever.   Incarcerated petitioners often proceed *pro se*, and there is no de facto presumption that they lack the tools necessary to do so.

Moreover, Mr. Wood is correct that the right of effective assistance of trial counsel is "a bedrock principle in our justice system," meaning a prisoner's inability to present a claim of ineffective assistance is "of particular concern."  *Martinez*, 566 U.S. at 12.   This was the reason for the *Martinez* exception.   But the Court strictly limited the exception to those situations where the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise an ineffective-assistance-of-trial-counsel claim, making it in many ways the equivalent of a direct appeal as to that claim.

> When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim.   This Court on direct review of the state proceeding could not consider or adjudicate the claim.   And if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims.

> The same is not true when counsel errs in other kinds of postconviction proceedings. While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding.

*Id*. at 10-11 (internal citations omitted). Here, even if the withdrawal of Mr. Wood's Rule 37 counsel on appeal could be said to have precluded any further review of Mr. Wood's claims, the claims were still addressed by one court – namely, the state trial court in the Rule 37 proceeding. For this reason and those previously stated, Mr. Wood has not demonstrated cause to excuse his procedural default of these claims.

### B.    Merits

Even if Mr. Wood's claims were not procedurally defaulted, they fail on the merits. As previously noted, three of his claims were presented in his amended Rule 37 petition and addressed by the state trial court. Under the Antiterrorism and Effective Death Penalty Act of 1996, and in the interests of finality and federalism, federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a

question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a state court's factual finding shall be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence); *Smulls v. Roper*, 535 F.3d 853, 861-62 (8th Cir. 2008) (applying § 2254(e)(1)'s presumption to a state trial court's findings).

Here, the record supports the findings and conclusions made by the state trial court in denying Rule 37 relief. On Mr. Wood's claim that his trial counsel was ineffective for failing to file a motion to suppress, the circuit court noted trial counsel had considered and discussed the issue with Mr. Wood but ultimately determined, as a matter of trial strategy, such a motion would be unsuccessful. (Doc. No. 6-6 at 60-61.) As the circuit court stated, this decision was correct under the law. The record demonstrates Mr. Wood was a parolee at the time of the search (*Id.* at 120, 130), significantly diminishing his expectation of privacy. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 851 (2006). The record also indicates Mr. Wood consented to the search. (Doc. No. 6-6 at 131.) In short, the decision of Mr. Wood's trial counsel to forego a motion to suppress did not constitute deficient performance under *Strickland*. *See Dodge v. Robinson*, 625 F.3d

1014, 1019 (8th Cir. 2010) (counsel's failure to raise a meritless claim cannot constitute ineffective assistance).

On Mr. Wood's claim that his trial counsel was ineffective for giving him incorrect advice regarding parole eligibility, the circuit court noted "there was no sentence to discuss or parole eligibility to consider" until after Mr. Wood was discharged from drug court and sentenced on the underlying felonies.  (Doc. No. 6-6 at 61.)  The circuit court credited trial counsel's testimony that he never discussed parole eligibility with Mr. Wood even as sentencing approached.  (*Id*. at 61, 147.)  The circuit court's findings on this claim clearly enjoy support in the record, and Mr. Wood cannot rebut the presumption of correctness by clear and convincing evidence.

On Mr. Wood's claim that his trial counsel was ineffective for failing to pursue a direct appeal, the circuit court found there was no evidence supporting Mr. Wood's contention that he had instructed his trial counsel to do so.  (*Id*. at 62.)  As the circuit court noted, Mr. Wood's trial counsel testified neither Mr. Wood nor his wife ever provided an answer when asked whether they wanted to file an appeal, despite his numerous attempts to get an answer from them.  (*Id*. at 147-48.)  In fact, they left trial counsel with the "strong impression" that they were planning to hire a different attorney.  (*Id*. at 148-49.)  Based on these representations, trial counsel filed a motion to withdraw.  (*Id*. at 149.)  He testified he did so early on so that Mr. Wood would have time to make other arrangements; he also made the file available, arranging for Mr. Wood's wife to pick it up.  (*Id*.)  This evidence supports the circuit court's finding that Mr. Wood did not ask his trial counsel to file an appeal and the consequent conclusion that trial counsel was not ineffective.

As for Mr. Wood's claims that were not raised in the Rule 37 proceeding, those claims lack merit for the same reasons previously stated in my analysis of their substantiality.  His trial counsel's failure to file a *Santobello* motion cannot be deemed deficient performance because the

17

record shows it was the parties' understanding from the outset that Mr. Wood would attend rehab at an ACC facility.   And he was not denied effective assistance of counsel at the post-trial stage, as a motion for new trial would have been unsuccessful, and his ineffectiveness arguments were made in the Rule 37 proceeding.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "1) if the claim is clearly procedurally defaulted, the certificate should not be issued; 2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted."   *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, Mr. Wood's claims are clearly procedurally defaulted for the reasons stated herein.   Additionally, there is no merit to his substantive constitutional claims.   For these reasons, no certificate of appealability will be issued.

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.     Mr. Wood's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

18

2.      A certificate of appealability will not be issued.

SO ORDERED this 6th day of May 2019.

                                                    _____
                                                    JOE J. VOLPE
                                                    UNITED STATES MAGISTRATE JUDGE